UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TROY PHILIPS,

                             Plaintiff,

    - against -

C.O. DONNY SMITH, C.O. OSCAR REBOLLO,
and C.O. SALVATORE FICAROTTA,

                             Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 19-CV-2019 (CS)

Appearances:

Sameer Nath, Esq.
Sim & DePaola, LLP
Bayside, New York
*Counsel for Plaintiff*

Loren Zeitler
Senior Assistant County Attorney
Office of the Westchester County Attorney
White Plains, New York
*Counsel for Defendants*

Seibel, J.

Before the Court is the motion to dismiss of Defendants Officer Donny Smith, Officer Oscar Rebollo, and Officer Salvatore Ficarotta (collectively, "Defendants"). (ECF No. 70.) For the following reasons, Defendants' motion is GRANTED.

## I.    BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Third Amended Complaint. (ECF No. 65 ("TAC").)[1] I set forth only the facts relevant to my decision.

---

[1] "ECF" refers to the Courts' Electronic Case Filing system.

A.  **Facts**

On November 20, 2015, Plaintiff Troy Philips was placed in the custody of the Westchester County Jail ("WCJ") in Valhalla, New York, for a parole violation. (TAC ¶¶ 4, 8.) Westchester Medical Center ("WMC") staff diagnosed him with "pseudo-seizures" triggered by stress and stressful events. (*Id.* ¶¶ 9-15.) On January 8, 2016, members of the WCJ Emergency Response Team, including Defendants, beat and tased Plaintiff without provocation, causing him serious injuries. (*Id.* ¶¶ 18-21.) He was taken to the WCJ infirmary, where he suffered a seizure, (*id.* ¶ 22), and then to WMC, (*id.* ¶¶ 22-23).

Later that day, Plaintiff returned to WCJ and was admitted to the infirmary. (*Id.* ¶ 24.) Defendants' supervisor filled out a Mental Health Referral for Plaintiff so that he could be sent to the Segregated Housing Unit ("SHU"), a punitive housing unit. (*Id.* ¶ 25.) The supervisor alleged that Plaintiff "had thrown items at the [officers] before the use of force." (*Id.*)

The next morning, a nurse cleared Plaintiff for SHU admission and he left the infirmary in the custody of Defendants Rebollo and Smith, among others. (*Id.* ¶¶ 26-27.) Plaintiff asserts that "Defendants threatened [him] not to speak about the incident of the day before" and "purposefully twisted his arms while uncuffing him and repeatedly threatened him." (*Id.* ¶ 27.)

Later that afternoon, Plaintiff was found unconscious in his cell, and an ambulance transferred him to WMC to be assessed for seizures. (*Id.* ¶¶ 28-29.) On January 10, 2016, Plaintiff returned to WCJ[2] custody, where he suffered leg and back pain. (*Id.* ¶¶ 29-30.) On January 11, 2016, Plaintiff was placed on suicide watch, despite his protests that he was not suicidal. (*Id.* ¶ 31.) On January 13, 2016, Plaintiff alleges that he was transferred to the 1-K

---

[2] Plaintiff alleges that he was returned to WMC custody, (TAC ¶ 29), but the context of the allegations suggests that Plaintiff meant WJC, because Plaintiff had already been at WMC.

2

SHU Unit, where he stayed until June 9, 2016.  (*Id.* ¶ 32.)  Plaintiff asserts that during this time staff members ignored his complaints that he was suffering back pain and having difficulty eating, (*id.* ¶¶ 32, 34-35), his "mental health began to deteriorate," (*id.* ¶ 37), he refused to see mental health professionals or take his medication, and "[m]ental health staff changed his mental health level to 1, the highest classification," (*id*).

On or around June 9, 2016, Plaintiff was transferred to state custody at Downstate Correctional Facility.  (*Id.* ¶ 38.)  In late June, he was briefly transferred to the custody of the New York State Office of Mental Health, which was allegedly unable to accommodate his "increasingly complicated medical needs."  (*Id.* ¶ 39.)  Plaintiff was released from custody on or about November 26, 2016, but promptly violated his parole and was returned to WCJ on December 1, 2016.  (*Id.* ¶ 40.)

Upon his readmission, Plaintiff could not walk and had to use a wheelchair.  (*Id.* ¶¶ 41-42.)  In October 2017, Plaintiff was transferred to state custody and placed in units with full-time nursing care.  (*Id.* ¶ 47.)  In August 2018, Plaintiff underwent surgery to repair a nasal fracture.  (*Id.* ¶ 52.)  Plaintiff alleges that he is now a "wheelchair bound paraplegic due to [Defendants'] use of excessive force."  (*Id.* ¶ 53.)

B.     **Procedural History**

On February 25, 2019, proceeding *pro se*, Plaintiff delivered his original complaint to prison authorities for mailing.  (ECF No. 2 ("OC") at 4.)[3]  It was received by the Court on March 4, 2019.  (OC at 1.)  Plaintiff asserted claims against "Valhalla County Jail," "Valhalla County Jail Staff," County Sheriff George Longworth, and County Commissioner of Corrections Kevin

---

[3] Citations to page numbers in the OC refer to the page numbers generated by the ECF system.

Cheverko.  (*Id.* at 1, 3.)  On August 13, 2019, Plaintiff filed an Amended Complaint, adding Donny Smith, Oscar Rebollo, Salvatore Ficarotta, and other Correctional Officers as Defendants. (ECF No. 16 ("AC") at 2-3.)[4]  On November 22, 2019, Defendants filed a letter requesting a pre-motion conference regarding their intended motion to dismiss the AC.  (ECF No. 35.)  At the pre-motion conference on January 3, 2020, the Court granted Plaintiff leave to amend, to allow Plaintiff to strengthen his complaint by adding facts relevant to the arguments raised in Defendants' pre-motion letter.  (Minute Entry dated Jan. 3, 2020.)  After receiving extensions of time, (ECF Nos. 41, 43), Plaintiff filed a Second Amended Complaint on June 16, 2020, (ECF No. 45 ("SAC")).

Defendants moved to dismiss the SAC on July 8, 2020.  (ECF No. 49.)  On July 30, 2020, the Court granted Plaintiff an extension of time to file his opposition to Defendants' motion to dismiss, setting September 30, 2020 as the deadline.  (ECF No. 57.)  On September 13, 2020, counsel appeared for Plaintiff, (ECF No. 58), and the Court permitted Plaintiff to amend his complaint for a third time, (ECF Nos. 60, 63).  On December 1, 2020, Plaintiff, no longer proceeding *pro se*, filed the Third Amended Complaint, dismissing all previously named defendants except for Officers Smith, Rebollo and Ficarotta, and asserting claims against Defendants pursuant to 42 U.S.C. § 1983.  (TAC.)

On January 18, 2021, Defendants moved to dismiss the TAC, (ECF No. 70), arguing that Plaintiff's claims are barred by the applicable statute of limitations and that the claims against Defendants in their official capacities fail because Plaintiff cannot establish municipal liability, (ECF No. 72 ("Ds' Mem.") at 6-12).  On February 11, 2021, before Plaintiff's opposition was

---

[4] Citations to page numbers in the AC refer to the page numbers generated by the ECF System.

due, (*see* ECF No. 69), counsel filed an application to withdraw, (ECF No. 75). On February 16, 2021, the Court ordered Plaintiff to show cause why his counsel should not be relieved, (ECF No. 78), and on March 16, 2021, the Court relieved counsel, giving Plaintiff a month to find new counsel, (Minute Entry dated Mar. 16, 2021).

On April 14, 2021, Plaintiff retained his current counsel. (ECF No. 81.) After receiving numerous extensions of time, (ECF Nos. 83, 85, 87, 90, 92), Plaintiff filed his brief in opposition to Defendants' motion to dismiss on July 26, 2021, (ECF No. 94 ("P's Opp.")), along with Plaintiff's Affidavit, (ECF No. 93-2 ("P's Aff.")). Defendants submitted their reply memorandum on August 26, 2021. (ECF No. 97.)

## II.     LEGAL STANDARD

### A.     Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up). "[A] complaint does not allege sufficient facts to suggest that its claim to relief is plausible," and, thus, "a motion to dismiss may be granted, where the underlying claim is time barred by a statute of limitations." *Figueroa v. City of N.Y.*, No. 07-CV-11333, 2008 WL 4185848, at *1 (S.D.N.Y. Sept. 4, 2008), *reconsideration denied*, 2009 WL 10738225 (S.D.N.Y. May 21, 2009).

B. **Documents Properly Considered**

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (cleaned up).

It is generally improper for a court to consider declarations and affidavits on a motion to dismiss. *Faulkner v. Beer*, 463 F.3d 130, 134 n.1 (2d Cir. 2006); *see Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018) ("[G]enerally, courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss."); *McKeefry v. Town of Bedford*, No.

6

18-CV-10386, 2019 WL 6498312, at *4 (S.D.N.Y. Dec. 2, 2019) ("Declarations and affidavits submitted in support of a motion to dismiss are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, not to advance factual averments or legal arguments.") (cleaned up). But the rule is different where, as here, a statute of limitations issue is raised and the plaintiff in response argues he is entitled to equitable tolling. Because equitable tolling is an affirmative defense that Plaintiff need not affirmatively plead in his complaint, *see Mira v. Kingston*, 218 F. Supp. 3d 229, 237 (S.D.N.Y. 2016), the Court may consider Plaintiff's affidavit when determining whether equitable tolling should be applied, *see Quinn v. United States*, No. 20-CV-3261, 2021 WL 738756, at *7 (S.D.N.Y. Feb. 25, 2021).[5]

### III. DISCUSSION

#### A. Timeliness

Defendants argue that Plaintiff's § 1983 claims should be dismissed because they are untimely. (Ds' Mem. at 6-9.) The statute of limitations for a § 1983 action in New York is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (summary order). Under federal law, a claim arising under § 1983 "accrues," meaning the statute of limitations starts to run, when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (cleaned up); *see Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("[W]hen a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run . . . .").

---

[5] In the alternative, it would be appropriate to convert the motion to dismiss to one for summary judgment. *See, e.g., Perez v. Harbor Freight Tools*, No. 15-CV-05983, 2016 WL 4734635, at *3-4 (E.D.N.Y. Sept. 9, 2016), *aff'd*, 698 F. App'x 627 (2d Cir. 2017).

Here, Plaintiff alleges that on January 8, 2016, Defendants unlawfully used excessive force against him.  (TAC ¶ 55.)  Because the case was not filed until February 25, 2019, Plaintiff's § 1983 claim is beyond the statute of limitations by approximately seven weeks.

Plaintiff does not dispute that he filed the case more than three years after the relevant incident, but rather invokes the doctrine of equitable tolling, which "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances."  *Goodman v. Port Auth. of N.Y. and N.J.*, 850 F. Supp. 2d 363, 381 (S.D.N.Y. 2012) (cleaned up).  Equitable tolling is applied, however, only in those "'rare and exceptional circumstances,' where a party was prevented from timely performing a required act and where that party 'acted with reasonable diligence throughout the period he sought to toll.'"  *Jones v. City of N.Y.*, 846 F. App'x 22, 24 (2d Cir. 2021) (summary order) (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)).  "The threshold necessary to trigger [it] is very high, lest the exceptions swallow the rule."  *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) (cleaned up).

"[A] litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

> The word "prevent" requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.

*Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir. 2000).  Thus, "the link of causation between the extraordinary circumstances and the failure to file is broken" if the party seeking equitable tolling has not exercised reasonable diligence in pursuing his rights.  *Hizbullahankhamon v.*

*Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (cleaned up); *see Sanchez v. United States*, No. 21-CV-1147, 2021 WL 2481836, at *2 (S.D.N.Y. June 17, 2021); *Hines v. United States*, No. 20-CV-10064, 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021).

In assessing whether an "extraordinary circumstance stood in [a plaintiff's] way," the court analyzes "the severity of the obstacle impeding compliance with a limitations period." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (cleaned up).  Consequently, "it is not enough for a party to show that he *experienced* extraordinary circumstances," but he must also "demonstrate that those circumstances *caused* him to miss the original filing deadline." *Id.* (emphasis in original) (cleaned up).  The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (*per curiam*).

Here, Plaintiff provides several reasons for filing this action late:  (1) Defendants subjected Plaintiff to excessive force that required medical attention; (2) Plaintiff's placement in the SHU prevented him from pursuing his claims; (3) Defendants threatened Plaintiff "not to take any action against them"; (4) Plaintiff continuously suffered as a result of the injuries he sustained and "was categorized as having mental health issues"; (5) Plaintiff constantly refused his medications; (6) Plaintiff "did not have direct access to someone that [could] help him with his claim"; (7) Plaintiff could only communicate with the prison law clerk in writing and because he "is illiterate, he had to find someone to read him the questions that the law clerk asked and to have someone write down the answers," which was a "long process"; (8) while he was in the SHU, Correctional Officers allegedly threw out Plaintiff's legal paperwork; and (9) Plaintiff could not find an attorney willing to take his case. (P's Opp. at 11-12; *see* P's Aff. ¶¶ 7, 9, 11-12.)

9

These factors, considered singly or in combination, do not present "exceptional circumstances" warranting equitable tolling. Certain of them are not exceptional, and none prevented Plaintiff from timely filing.

Transfers between facilities, including placement in the SHU, do not justify equitable tolling, as these circumstances are "routine experiences of prison life that do not rise to a level of extraordinary circumstances." *Gonzalez v. Rikers Island Warden*, No. 14-CV-6749, 2018 WL 1283683, at *2 (E.D.N.Y. Mar. 13, 2018) (cleaned up); *see Shomo v. Furco*, No. 18-CV-8523, 2020 WL 4194941, at *6 (S.D.N.Y. July 20, 2020) ("Courts have found that solitary confinement, lock-downs, and restricted access to the law library do not qualify as 'extraordinary circumstances' warranting equitable tolling.") (cleaned up); *Prescod v. Brown*, No. 10-CV-2395, 2011 WL 182063, at *4 (S.D.N.Y. Jan. 20, 2011) (placement in keeplock or SHU does not provide basis for equitable tolling) (collecting cases), *report and recommendation adopted*, 2011 WL 497855 (S.D.N.Y. Feb. 10, 2011). Further, even if Plaintiff's placement in the SHU were a significant obstacle, Plaintiff alleges that he remained there from January 13, 2016 until June 9, 2016, giving Plaintiff ample time to pursue his legal rights within the three-year limitations period.

Likewise, "restricted access to library facilities does not merit equitable tolling," *Cross v. McGinnis*, No. 05-CV-504, 2006 WL 1788955, at *6 (S.D.N.Y. June 28, 2006), nor does "limited access to legal assistance," *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002); *see Stokes v. Miller*, 216 F. Supp. 2d 169, 172-73 (S.D.N.Y. 2000) (insufficiency of legal assistance and lack of education do not constitute extraordinary circumstances warranting equitable tolling). Indeed, the original complaint as filed was based entirely on facts purportedly known to Plaintiff all along, with no case citations or legal analysis that might have required

library access or legal know-how.  Similarly, the inability to retain counsel, which is commonplace, does not amount to an exceptional circumstance.  *See, e.g., Gonzalez v. United States*, No. 13-CV-6752, 2014 WL 11516087, at *3 (S.D.N.Y. May 19, 2014); *Brill v. Superintendent, Oneida Corr. Facility*, 277 F. Supp. 2d 205, 208 (E.D.N.Y. 2003).

The existence of mental illness also does not suffice to justify equitable tolling.  "The burden of demonstrating the appropriateness of equitable tolling for mental illness lies with the plaintiff; in order to carry this burden, she must offer a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights."  *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (cleaned up).  "In a case where the existence of a mental illness or condition is established, but where the [plaintiff] has failed to provide a sufficient explanation as to why this illness or condition prevented him from pursuing his legal rights despite his due diligence, courts have consistently refused to toll the applicable statute of limitations."  *Stephenson v. Ercole*, No. 07-CV-3677, 2009 WL 3872358, at *4 (E.D.N.Y. Nov. 17, 2009) (collecting cases); *see, e.g., Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (plaintiff's "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling."); *see also Quinn*, 2021 WL 738756, at *10 (collecting cases); *Coronel v. United States*, No. 12-CV-8673, 2013 WL 765321, at *1 n.9 (S.D.N.Y. Feb. 28, 2013) (same).  That is the situation here.  Plaintiff has provided no information about his mental illness, let alone shown how it prevented rational thought or otherwise incapacitated him from appreciating his situation or pursuing his

rights, and thus he has not shown an extraordinary circumstance. *See Price v. Walsh*, No. 10-CV-4789, 2014 WL 4926287, at *2 (E.D.N.Y. Sept. 30, 2014) (collecting cases).[6]

Nor is Plaintiff's alleged illiteracy an exceptional circumstance. *See, e.g., Samo v. Keyser*, 305 F. Supp. 3d 551, 557-58 (S.D.N.Y. 2018) (rejecting Plaintiff's argument "that his mental condition is an extraordinary circumstance that justifies equitable tolling" and explaining that "[l]ack of education and even actual illiteracy . . . do not suffice as 'extraordinary circumstances.'"), *report and recommendation adopted*, No. 17-CV-5043, 2018 WL 4565143 (S.D.N.Y. Sept. 21, 2018), *certificate of appealability denied*, No. 18-2985, 2019 WL 1531762 (2d Cir. Feb. 21, 2019); *Ayala v. Fischer,* No. 04-CV-3404, 2004 WL 2435523, at *1 (S.D.N.Y. Nov. 2, 2004) ("Ignorance of the law and an inability to read or write do not constitute extraordinary circumstances that would justify equitable tolling."); *Martinez v. Kuhlmann*, No. 99-CV-1094, 1999 WL 1565177, at *5 (S.D.N.Y. Dec. 3, 1999) ("An inability to speak, read or write English, alone or in combination with difficulty obtaining assistance in legal research from other prisoners or prison staff, is not sufficiently extraordinary to merit equitably tolling the . . . statute of limitations, since these are disabilities common to many prisoners."), *report and recommendation adopted*, No. 99-CV-1094, 2000 WL 622626 (S.D.N.Y. May 15, 2000).

"Courts rarely find medical problems or injuries to be a sufficient extraordinary circumstance to warrant equitable tolling." *Cross*, 2006 WL 1788955, at *6 (collecting cases). "The mere existence of a physical ailment does not justify equitable tolling . . . a [plaintiff] must demonstrate that these health problems rendered him unable to pursue his legal rights during the

---

[6] Moreover, Plaintiff's refusal to take his medications cannot excuse Plaintiff from complying with the statute of limitations, as this choice was within Plaintiff's control. *See Gunn v. Aquafredda*, No. 19-CV-10039, 2021 WL 3115488, at *6 (S.D.N.Y. July 21, 2021) ("voluntary action like a hunger strike" cannot result in equitable tolling).

[applicable] time period." *Velez v. Walsh*, No. 07-CV-103, 2010 WL 519816, at *2 (E.D.N.Y. Feb. 9, 2010). Plaintiff does not explain how the injuries he suffered, while serious, or the medical treatment he thereafter received, prevented him from pursuing his rights. *See id.* (prisoner asserted physical ailment contributed to delay but did not explain how injuries limited him); *Cross*, 2006 WL 1788955, at *6 (prisoner did not "show any causal connection between his injuries and his failure to file . . . nor d[id] he make clear how long he was incapacitated by his injuries").

"[I]n the prison context, reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant or another official who could be or was influenced by a defendant." *Davis v. Jackson*, No. 15-CV-5359, 2016 WL 5720811, at *11 (S.D.N.Y. Sept. 30, 2016). But the inmate must still show he acted diligently. *Id.* Plaintiff provides no details about the content or timing of any threats.[7] But assuming that he was threatened throughout his time in the SHU at WCJ, that period was five months, leaving Plaintiff two-and-a-half-years to bring the lawsuit if he were diligent.

Nor has Plaintiff demonstrated that Defendants' alleged destruction of his paperwork while he was in the SHU caused his failure to timely file. He fails to specify what legal papers were destroyed or why they were necessary to the filing of his claim. *See Gonzalez*, 2018 WL 1283683, at *1 (rejecting plaintiff's argument for equitable tolling based on his court documents being seized and destroyed because plaintiff "was well aware of the facts surrounding the

---

[7] In the TAC, Plaintiff alleges that on January 9, 2016, two of the Defendants threatened him "not to speak about the incident of the day before" and "repeatedly threatened him" while twisting his arms. (TAC ¶ 27.) In his affidavit, however, Plaintiff asserts that while he was in the SHU, he was "threatened constantly by the defendants not to make any complaints." (P's Aff. ¶ 7.)

incident that form[ed] the basis of his complaint, and none of the documents at issue were required for him to acquire facts necessary to his cause of action."); *Rodriguez v. United States*, No. 06-CV-330, 2009 WL 3149596, at *1 (S.D.N.Y. Sept. 30, 2009) (no tolling where prisoner failed to identify causal link between loss of legal papers and failure to timely file).

There is no indication as to what, if anything, changed in Plaintiff's circumstances between when the statute of limitations period elapsed and when Plaintiff filed his original complaint roughly seven weeks later, further demonstrating that these circumstances did not prevent him from timely filing. He makes the generalized assertion that "[i]t is clear that the Plaintiff attempted to pursue his legal rights diligently but extraordinary circumstances stood in his way that prevented him from timely filing." (P's Opp. at 12.) But he does not explain what he was doing to pursue his legal claims from the time of the assault through early 2019. Without articulating how he was diligent, his arguments fail to link the potentially relevant circumstances to his inability to timely file this action, and Plaintiff thus fails to explain how any circumstance "beyond his control . . . prevented him from filing this Section 1983 [action] within the limitations period." *Urena v. Annucci*, No. 16-CV-9708, 2018 WL 3863454, at *4 (S.D.N.Y. Aug. 14, 2018) (cleaned up).

For the reasons stated above, Plaintiff's § 1983 claims are time-barred.[8]

### B. <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up). "Leave to amend, though

---

[8] Because I dismiss on statute of limitations grounds, I need not address Defendants' arguments on failure to establish municipal liability.

liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint three times, (*see* ECF Nos. 16, 45, 65), once by counsel, (ECF No. 65), after having the benefit of a pre-motion letter from Defendants outlining the proposed grounds for dismissal, (ECF No. 35), as well as the Court's observations during the January 3, 2020 pre-motion conference, (Minute Entry dated Jan. 3, 2020). Plaintiff also had the benefit of reviewing Defendants' Memorandum of Law in support of Defendants' motion to dismiss Plaintiff's SAC, (ECF Nos. 49-51), before his third, counseled amendment. In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per*

*curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. Indeed, "[t]he problem[s] with [Plaintiff's] causes of action [are] substantive," and "better pleading will not cure [them]." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the pending motion, (ECF No. 70), and close the case.

**SO ORDERED.**

Dated: September 15, 2021
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.